The Full Commission has reviewed this matter based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of prior Opinion and Award. However, pursuant to its authority under G.S. § 97-85, the Full Commission modifies in part and affirms in part the Deputy Commissioner's decision and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 26 September 1997 and subsequent thereto as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer IBM on 14 March 1995. At that time Liberty Mutual Insurance Company was the carrier on risk.
3. An employment relationship existed between plaintiff-employee and defendant-employer Interior Wood Specialties on 28 September 1995. At that time defendant Interior Wood Specialties (hereinafter referred to as "Interior Wood") was self-insured with North Carolina Forestry Association as the administrator.
4. Plaintiff's average weekly wage while working for defendant-employer IBM on 14 March 1995 is to be determined by an Industrial Commission Form 22, admitted into evidence as Stipulated Exhibit #5.
5. Plaintiff's average weekly wage while working for defendant-employer Interior Wood on 28 September 1995 is to be determined by an Industrial Commission Form 22, received at the Commission following the hearing on 26 September 1997.
6. The Pre-Trial Agreement between plaintiff and defendants IBM and Liberty Mutual is admitted into evidence as Stipulated Exhibit #1A.
7. The Pre-Trial Agreement between plaintiff and defendants Interior Wood and Aegis is admitted into evidence as Stipulated Exhibit #1B.
8. The Industrial Commission Form 19 with respect to defendant-employer Interior Wood and the Form 19 with respect to defendant-employer IBM are admitted into evidence as Stipulated Exhibit #2.
9. Defendant-employer Interior Wood's Register History is admitted into evidence as Stipulated Exhibit #3.
10. A statement of plaintiff's earnings while working for defendant-employer IBM is admitted into evidence as Stipulated Exhibit #4.
11. The Industrial Commission Form 22 for defendant-employer IBM is admitted into evidence as Stipulated Exhibit #5.
12. Stipulated Exhibit #6 includes a letter from Cathleen Swords to Dr. Ronald Epner and two (2) pages of medical restrictions.
13. Plaintiff's Responses to defendants IBM's and Liberty Mutual's Interrogatories are admitted into evidence as Stipulated Exhibit #7.
14. Plaintiff's Responses to defendants Interior Wood's and Aegis' interrogatories are admitted into evidence as Stipulated Exhibit #8.
15. Defendant-employer IBM's Medical History Sheets, dated 19 October 1994 through 12 February 1996, are admitted into evidence as Stipulated Exhibit #9.
16. The parties' Stipulated Exhibit #10, submitted after the hearing, was introduced at the hearing and admitted as part of Stipulated Exhibit #6.
17. Plaintiff's records from Bull City Rehabilitation Associates, P. A., dated 31 May 1995 through 12 June 1995 are admitted into evidence as Stipulated Exhibit #11.
18. Correspondence from Kathy Baughman, defendant-carrier, and Dr. Ronald Epner and Dr. Brett Hynninnen is admitted into evidence as Stipulated Exhibit #12.
19. A letter from New England Medical Center to plaintiff's counsel is admitted into evidence as Stipulated Exhibit #13.
20. The issues to be determined are whether the plaintiff suffers from a compensable injury or occupational disease as the result of her work with either of the defendant-employers, and if so, to what benefits is he entitled, if any?
***********
 RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. James Urbaniak, Dr. Stephen Shaffer, Dr. Charles Cassidy, Dr. Ronald Epner, James E. Seitz, David Pridgen and David Savage are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 14 March 1995, plaintiff was a 46-year old male employed by defendant-employer IBM as a computer assembler. Plaintiff began working in this temporary, full-time position in September 1994. This position also involved frequent overtime hours.
2. Plaintiff's job duties at IBM as a computer assembler required him to push and pound together computer parts using his left hand. Some computer parts required extra pushing and pounding, occasionally leaving plaintiff's hands swollen and discolored.
3. Plaintiff assembled up to forty (40) computers within an eight (8) hour work day. Each computer required ten to twenty (10-20) pushing or pounding motions. The type of part called "sloop five by five" was especially difficult to assemble.
4. In March 1995 plaintiff began to feel a sharp pain in his left wrist. Each time he pushed or pounded on a computer part, the plaintiff felt a stabbing pain up his arm. The pain increased when plaintiff's use of his hand increased.
5. Plaintiff first sought treatment on 14 April 1995 from IBM's Occupational Health Service. Dr. Pizzino, at IBM, gave plaintiff pain relievers, splint and plaintiff work restrictions of no bending his left wrist, back, avoid using left hand or arm with force and no pinching movements with his left hand.
6. Plaintiff worked alternate light duty assignments as a "floater" or substitute line leader, parts carrier and with some computer assembly in April and May 1995. Although plaintiff's left hand improved somewhat with light duty, he continued to have stabbing pains, burning, numbness and weakness.
7. On 31 May 1995 defendant-employer IBM referred plaintiff to Dr. Brett Hynninen who diagnosed plaintiff with avascular necrosis of the left scaphoid. Plaintiff was limited to no repetitive flexion/extension of the left wrist, and no gripping, pinching or twisting of the wrist.
8. In late May 1995, plaintiff met with his supervisor and an IBM nurse concerning light duty work. Bob Paschall, a manager with defendant-employer IBM, attempted to find duties for plaintiff which would not strain plaintiff's wrist. However, plaintiff had already attempted working with these types of duties and had experienced a worsening of his left hand. Therefore, plaintiff was justified in refusing these light duties from defendant-employer IBM.
9. Plaintiff sought treatment from Dr. Ronald Epner on 15 June 1995 upon referral. Dr. Epner diagnosed plaintiff with osteonecrosis (or avascular necrosis) of the left scaphoid and removed plaintiff from work for two (2) weeks. Avascular necrosis is a condition where the bone dies due to lack of blood supply. When the scaphoid bone is involved, the other bones in the wrist become involved as the original bone dies. This causes the entire wrist to become painful. Osteonecrosis of the scaphoid is a progressive disorder involving death of the bone and collapse with increasing pain and increasing dysfunction of the wrist. Plaintiff has the type of osteonecrosis where no prior fracture of the bone occurred.
10. The records as to plaintiff's last day at IBM are contradictory. Defendant-employer IBM's Occupational Health records indicate plaintiff was terminated on or around 6 June 1995. However, Dr. Epner's records, which began 15 June 1995, note a contact in late June with defendant-employer IBM concerning plaintiff's work restrictions. Plaintiff also believes his last day at defendant-employer IBM was soon after his first visit to Dr. Epner. Additionally, a letter from Cathleen Swords, a nurse at IBM, to Dr. Epner indicates that when Dr. Epner saw plaintiff on 15 June 1995, plaintiff was still employed by IBM. Dr. Epner originally placed plaintiff out of work for two (2) weeks. However later Dr. Epner changed his recommendation to allow light duty after he was informed by Ms. Swords that very light duty jobs were available. Based upon the greater weight of the evidence, plaintiff was terminated by defendant-employer IBM on 16 June 1995.
11. On 20 June 1995 plaintiff was hired at Interior Wood as an optimizer. An optimizer's duties entail going through drawings and specifications, handwriting data from the drawings on sheets and then typing numbers on a computer. Plaintiff would sometimes type in blocks of two to four hours at a time.
12. When plaintiff first began his employment at defendant Interior Wood, his left hand pain had improved, although had not entirely resolved. By late September 1995, plaintiff began experiencing numbness in his index finger, thumb, and hand, and pain in his palm and up his left arm.
13. Plaintiff notified defendant Interior Wood of his left hand problems and Interior Wood completed an Industrial Commission Form 19 noting an injury date of 28 September 1995.
14. Plaintiff's employment with defendant Interior Wood ended on 9 October 1995. Plaintiff then returned to Dr. Epner for treatment and was diagnosed on 10 October 1995 with carpal tunnel syndrome as well as osteonecrosis in the left hand. Dr. Epner placed plaintiff on "partial" disability `as tolerated by pain'.
15. After leaving his employment with defendant Interior Wood, plaintiff moved back to Massachusetts to join his family. Since February 1996 plaintiff has received vocational assistance from the State of Massachusetts and medical care through Veterans' Administration. Dr. Cassidy, with the Veterans' Administration, diagnosed plaintiff with left avascular necrosis of the scaphoid involving cystic changes and left carpal tunnel syndrome.
16. When plaintiff's pain increased and left hand function further deteriorated, plaintiff underwent surgery on 21 June 1996 to excise a cyst and perform a bone graft to replace deteriorating bone tissue. Following surgery, the cyst resolved but the bone graft did not cure his condition.
17. Since his June 1996 surgery, plaintiff's left hand pain has increased. Any use of plaintiff's hand increases the pain and he has difficulty sleeping or concentrating due to the constant aching. Plaintiff takes 1000 mg of Tylenol each day and sometimes uses Tylenol with Codeine.
18. Prior to plaintiff's work with defendant-employer IBM, he had developed Kienbock's disease, or avascular necrosis of the lunate bone of the right wrist, in the late 1970s and received worker's compensation benefits. Plaintiff had multiple surgeries in the late 1970s and early 1980s on his right wrist and eventually had that wrist fused. As a result of this right hand condition plaintiff has no grip strength, muscle spasms and constant pain in the right wrist and cannot flex it. Following his right wrist fusion surgery, plaintiff returned to school, received a bachelor's degree in engineering and worked several years as a construction manager prior to moving to North Carolina. Prior to 1995, plaintiff did not have any left wrist problems.
19. Dr. James Urbaniak, professor of Orthopedic Surgery at Duke University School of Medicine and a specialist in hand surgery, evaluated plaintiff's left hand on 13 January 1998 at plaintiff's request. Dr. Urbaniak has authored a textbook on avascular necrosis. Although the most common cause of osteonecrosis of the scaphoid is a fracture to the scaphoid bone, Dr. Urbaniak testified that repetitive trauma can also cause or aggravate this condition.
20. Dr. Urbaniak opined that plaintiff's employment with defendant-employer IBM more likely than not aggravated plaintiff's underlying avascular necrosis to the point it became symptomatic and eventually disabling in 1995. Dr. Urbaniak further opined that plaintiff's employment with defendant-employer IBM caused his left carpal tunnel syndrome.
21. Plaintiff's employment with defendant-employer IBM caused or significantly aggravated his avascular necrosis and left carpal tunnel syndrome. Furthermore, plaintiff's employment with defendant-employer IBM placed him at an increased risk of developing and/or aggravating his avascular necrosis condition and his left carpal tunnel syndrome as compared to members of the public not so employed.
22. Plaintiff's last injurious exposure to the hazards of the left avascular necrosis of the left scaphoid and left carpal tunnel syndrome occurred at defendant-employer IBM.
23. Plaintiff's brief employment at defendant Interior Wood could have made the avascular necrosis more symptomatic but it would have been a temporary aggravation. Also, Plaintiff's symptoms of left carpal tunnel while employed at IBM were not diagnosed until later. Plaintiff's employment with defendant Interior Wood did not cause or significantly contribute to the development of his left carpal tunnel syndrome.
24. Following plaintiff's symptomatic development of avascular necrosis as a result of plaintiff's employment with defendant-employer IBM, any use of plaintiff's hands would have been a temporary aggravation.
25. The Full Commission places more weight on the testimony of Dr. Urbaniak, Dr. Epner and Dr. Cassidy, with the greater on Dr. Urbaniak than the testimony of Dr. Stephen Shaffer. Dr. Shaffer is an orthopedic surgeon with a specialty in hand surgery, however Dr. Shaffer did not actually examine plaintiff and based his opinions solely on the medical records and defendant counsel's hypotheticals.
26. As a result of plaintiff's development of avascular necrosis of the left scaphoid and left carpal tunnel syndrome, plaintiff was unable earn wages in any employment from 16 June 1995 through 19 June 1995 and from 9 October 1995 through the present and continuing.
27. In fairness to both parties, plaintiff's average weekly wage at defendant-employer IBM should not be based on the Industrial Commission Form 22 alone. The Form 22 does not show plaintiff's actual attendance. When one takes into account defendant-employer IBM's actual wage records for plaintiff, plus the Industrial Commission Form 22 and plaintiff's testimony, an average weekly wage of $307.86 is a more fair and accurate reflection of plaintiff's actual wages. Plaintiff missed eleven (11) days from 7 October 1994 to 17 October 1994 and twelve (12) days for the birth of his child from 21 March 1995 to 2 April 1995. Plaintiff's first day of disability was not until 23 March 1995 when plaintiff was unable to continue working in his light duty position. Calculating average weekly wage for the period from 1 September 1994 through 23 March 1995, plaintiff earned a total of $10,775.90 and worked 245 days. These calculations yield an average weekly wage of $307.86, resulting in a $205.25 per week compensation rate.
***********
Based upon the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage while working for defendant-employer IBM was $307.86, yielding a $205.25 compensation rate. G.S. § 97-2(5).
2. The acquisition and aggravation of plaintiff's symptomatic avascular necrosis of the left scaphoid and his left carpal tunnel syndrome were due to causes and conditions characteristic of and peculiar to his employment with defendant-employer IBM, are not an ordinary disease of life to which the general public is equally exposed, and are, therefore, occupational diseases. G.S. § 97-53(13).
3. Plaintiff's last injurious exposure to the hazards of the left avascular necrosis of the left scaphoid and left carpal tunnel syndrome occurred at defendant-employer IBM. G.S. § 97-57. Although plaintiff suffered an aggravation of his symptoms while employed with defendant Interior Wood, this was temporary and did not proximately augment plaintiff's diseases. Id.
4. As a result of his compensable avascular necrosis of the left scaphoid and left carpal tunnel syndrome, plaintiff is entitled to be paid by defendants IBM and Liberty Mutual Insurance Company temporary total disability compensation at the rate of $205.25 per week from 16 June 1995 through 19 June 1995 and ongoing total disability compensation from 9 October 1995 through the present and continuing until such time as he returns to work or until further order of this Commission. G.S. § 97-29.
5. As a result of his left scaphoid avascular necrosis and left carpal tunnel syndrome, plaintiff is entitled to have defendants IBM and Liberty Mutual Insurance Company provide all medical treatment arising from these compensable occupational diseases. G.S. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies in part and affirms in part the Deputy Commissioner's Opinion and Award and enters the following:
 AWARD
1. Defendants IBM and Liberty Mutual Insurance Company shall pay to plaintiff temporary total disability compensation at the rate of $205.25 per week from 16 June 1995 through 19 June 1995 and ongoing total disability compensation at the rate of $205.25 per week from 9 October 1995 and continuing until such time as he returns to work or until order of the Commission. Those amounts which have accrued shall be payable in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants IBM and Liberty Mutual Insurance Company shall pay all medical expenses incurred by plaintiff as a result of his compensable diseases.
3. A reasonable attorney fee of twenty-five percent (25%) of the compensation awarded above is approved for plaintiff's counsel. From the accrued compensation, this fee shall be deducted from the amounts due plaintiff and paid directly to plaintiff's counsel with every fourth check thereafter being paid to plaintiff's counsel.
4. Defendants IBM and Liberty Mutual Insurance Company shall pay the costs.
 S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER